IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES KERRIGAN                   :        CIVIL ACTION
                                 :
            v.                   :
                                 :
OTSUKA AMERICA                   :
PHARMACEUTICAL, INC., et al.  :        NO. 12-4346

MEMORANDUM

McLaughlin, J.                              October 31, 2012


        This case arises from the plaintiff's termination from
employment at Otsuka America Pharmaceutical, Inc. ("OAPI").  The
plaintiff, James Kerrigan, brings claims under the New Jersey
Conscientious Employee Protection Act ("CEPA"), the New Jersey
Law Against Discrimination ("NJLAD"), and common law claims for
intentional infliction of emotional distress, negligent
infliction of emotional distress, misrepresentation, and
defamation.

        Defendants OAPI and Mark Altmeyer now move to dismiss
the plaintiff's complaint pursuant to Federal Rule of Civil
Procedure 12(b)(6).  The Court will grant the motion and dismiss
with prejudice the NJLAD, intentional infliction of emotional
distress, negligent infliction of emotional distress, and
misrepresentation counts and dismiss the CEPA and defamation
claims without prejudice.

I.    <u>Facts as Stated in the Complaint</u>

Kerrigan was hired on January 12, 2006 at Otsuka Pharmaceutical Development and Commercialization, Inc., as a Senior Director, Global Marketing.  He was assigned responsibility for the marketing of the drug Samsca in the United States, reporting through OAPI.  Compl. ¶10.

From 2009 until his termination, Kerrigan was the "brand lead" for Samsca.  Compl. ¶12.

In 2011, Kerrigan learned about an article written by a web site known as Today's Hospitalist about Samsca.  The article had used information from an OAPI sponsored panel, and proper disclosures and fair balance were missing.  Compl. ¶24.

Kerrigan reported the publication to his superior in the company.  Compl. ¶25.  After the Today's Hospitalist incident, OAPI made an inquiry into other potential issues.  In response, Kerrigan notified his supervisor of newsletters published in 2010 by Premiere Healthcare Resources, Inc., that were not fair and balanced.  Compl. ¶28.

OAPI provides in its Comprehensive Compliance Program: "Procedures for Reporting Violations. The Company's Code of Conduct requires employees to report any known or suspected violations of law, regulations, company policies or procedures to their supervisor or to the Chief Compliance Officer." Compl. ¶45.

After Kerrigan reported the compliance issues in the

publications, Mark Altmeyer, the President and CEO of OAPI, and HR diminished Kerrigan's personnel evaluation from a rating of 4 out of 5 to 2 out of 5, over the objection of Kerrigan's direct supervisor Beshad Sheldon.  Compl. ¶¶34-35.

Altmeyer criticized Kerrigan, saying his "business acumen" was poor and that he had "no insights."  Compl. ¶41. Kerrigan received emails at 10:00 PM demanding that reports be prepared by 8:00 AM and was publicly berated in front of his peers.  Compl. ¶¶96-97.

On May 29, 2012, Kerrigan was terminated "for cause" for "putting the company at risk."  Compl. ¶66.  The complaint alleges that the termination "for cause" had no basis in OAPI policy, but was done to retaliate against Kerrigan for his reporting a possible compliance issue.


II.  Discussion

The plaintiff's complaint alleged six counts: (1) violation of CEPA; (2)violation of the NJLAD; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) misrepresentation; and (6) defamation. In the briefing on the motion to dismiss, the plaintiff conceded that the negligent infliction of emotional distress claim is not viable so the Court will dismiss that count with prejudice.

Of the remaining counts, the defendants argued that the

NJLAD, intentional infliction of emotional distress, and defamation counts should be barred by the waiver provision of CEPA, or, in the alternative, that each fails to state a claim. The defendants also argue that the complaint's CEPA and misrepresentation counts fail to state a claim.

When evaluating a motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, is able to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A plaintiff cannot rest "on a formulaic recitation of the elements" or mere "labels and conclusions," because "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 545, 555 (citations omitted).

With those principles in mind, the Court considers each of the contested counts of the complaint.

A.    CEPA Count

A plaintiff asserting a CEPA violation must show: (1) a

4

reasonable belief that her employer's conduct violated a law, rule, or regulation; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between her whistle-blowing activity and the adverse employment action. See Caver v. The City of Trenton, 420 F.3d 243, 254 (3d Cir.2005); Dzwonar v. McDevitt, 177 N.J. 451, 462, 828 A.2d 893 (2003).

The plaintiff's claim fails because the plaintiff cannot establish any CEPA-protected whistle-blowing activity. In particular, a plaintiff cannot establish that he engaged in a CEPA-protected act when the plaintiff's actions fall within the plaintiff's job duties. See, e.g., Massarano v. N.J. Transit, 400 N.J.Super. 474, 491 (App. Div. 2008); White v. Starbucks, 2011 WL 6111882, at *9 (N.J. Super. Ct. App. Div. Dec. 9, 2011); Mehalis v. Frito-Law Inc., 2012 WL 2951758 at *5 (D.N.J. July 2, 2012).

The plaintiff claims that he was illegally retaliated against for reporting potential compliance issues in publications about the drug Samsca to his supervisors in OAPI. However, Kerrigan was the brand lead for the drug so ensuring compliance in marketing would have fallen within his job duties. Compl. ¶¶10, 12.

The complaint also acknowledges that OAPI policy requires employees to report any known compliance violations to

their supervisors.  Compl. ¶45.  Finally, Kerrigan never reported the compliance issues to anyone outside of OAPI, and he only reported the 2010 Premiere Healthcare newsletter issue in response to an inquiry made by OAPI.  Compl. ¶28.

The plaintiff's heavy reliance on the <u>Donelson v. Dupont Chambers Works</u> case is misplaced because in that opinion, the New Jersey Supreme Court was not considering what constituted protected activity under CEPA, but the more limited question of whether recovery under CEPA for economic losses associated with back pay and front pay requires proof of actual or constructive discharge.  <u>See</u> <u>Donelson v. Dupont Chambers Works</u>, 206 N.J. 243 253 (2011).

The Court, therefore, will dismiss the CEPA claim, although the dismissal of the CEPA claim will be without prejudice because the Court does not find that the plaintiff would be unable to re-plead a valid CEPA claim.

B.   <u>NJLAD Count</u>

The Court will grant the defendants' motion to dismiss the NJLAD count for two reasons.  First, the NJLAD protects employees who are harassed or discriminated against based on their membership in a number of enumerated protected classes. <u>See generally</u> N.J. Stat. Ann. § 10:5-12.  In the plaintiff's opposition to the motion to dismiss, the plaintiff clarifies that

his NJLAD claim is based on the creation of a hostile work environment by Mr. Altmeyer.  However, the case law establishes that membership in a protected class is a threshold element to establish a hostile work environment claim.  See Caver at 262.

Nowhere in the complaint has the plaintiff alleged that the plaintiff is a member of a protected class or that the alleged hostile work environment was created because of his membership in a protected class.  The plaintiff's complaint fails to sufficiently plead an NJLAD claim.

Additionally, the Court finds that the NJLAD count is barred by the waiver provision of CEPA.  The text of the CEPA statute contains a clause that reads, "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." N.J. Stat. Ann. § 34:19-8.

Other courts have concluded that the CEPA waiver clause applies even when the underlying CEPA claim is dismissed.  See, e.g., Smith v. Twp. of E. Greenwich, 519 F. Supp. 2d 493, 510 (D.N.J. 2007), aff'd, 344 F. App'x 740 (3d Cir. 2009) (applying CEPA waiver provision where court also dismissed CEPA claims).  The Court is persuaded by this approach because the text of the statute states that the waiver becomes effective at the institution of a CEPA action and has no language qualifying the

7

effectiveness of the waiver based on the ultimate viability of the CEPA claim.

In terms of the scope of the waiver, as New Jersey courts have explained, "causes of action that fall within this waiver provision are those causes of action that are directly related to the employee's termination due to disclosure of the employer's wrongdoing." Falco v. Community Medical Center, 296 N.J. Super. 298, 318 (App. Div. 1997) overruled on other grounds.

Claims are not waived if they "do not resemble the alleged CEPA violations and require different proofs than those needed to substantiate the CEPA claim." Young v. Schering Corp., 141 N.J. 16, 31(1995).

The Court finds that the NJLAD count is barred because it is based on the same alleged protected activity and alleged retaliation as the CEPA claim.  In describing the NJLAD count, the complaint does nothing more than incorporate the facts and allegations from the CEPA claim and assert that the "actions of retaliation described above" violate the NJLAD.  Compl. ¶91.

Other courts have found NJLAD claims waived in analogous situations.  See Zanes v. Fairfield Communities, Inc., CIV.A. 05-2288, 2008 WL 2780461 at *6 (D.N.J. July 17, 2008) ("[The plaintiff] claims that he was subjected to a hostile work environment and then abruptly fired in retaliation for opposing discriminatory marketing practices prohibited by LAD. Thus, his

LAD claim closely resembles, and does not require different proofs from, his CEPA claim."); <u>Calabria v. State Operated Sch. Dist. for City of Paterson</u>, CIV.A.06-CV6256, 2008 WL 3925174 at *6 (D.N.J. Aug. 26, 2008) ("Here, Plaintiffs assert the same protected activity stemming from the March 8, 2004 letter to which they relied upon for their CEPA claim. Plaintiffs' NJLAD claim, is, therefore, waived and dismissed.").

The Court finds that the NJLAD count is waived under the CEPA waiver provision.  Because it does not appear that the plaintiff count could sufficiently re-plead the NJLAD count, the Court will dismiss that count with prejudice.

Although the defendants argue that the CEPA waiver provision also applies to the common law counts of intentional infliction of emotional distress and defamation, the Court finds that those counts require different proofs and are not waived under CEPA.  Each of the remaining contested counts, therefore, will be analyzed on their merits.

C.   <u>Intentional Infliction of Emotional Distress</u>

To state a claim for intentional infliction of emotional distress, the plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  <u>See</u>

<u>Hoy v. Angelone</u>, 554 Pa. 134, 151 (1998); <u>Buckley v. Trenton</u>
<u>Saving Fund Soc.</u>, 111 N.J. 355, 366 (1988).

      The complaint fails to allege any facts that reach the
required level of outrageous conduct.  The complaint alleges that
Kerrigan endured emails sent at 10:00PM demanding reports at 8:00
AM and being publicly berated in front of his colleagues.  Compl.
¶¶94-98.

      Accepting those allegations as true, the Court finds
that the complaint fails to state of claim for intentional
infliction of emotional distress.  This count will be dismissed
with prejudice because the Court finds that the plaintiff would
not be able to re-plead in a way that would state a viable claim
for intentional infliction of emotional distress.


    D.   <u>Misrepresentation</u>

      The plaintiff's complaint brings a count for
misrepresentation, alleging that Kerrigan was not able to utilize
the paid time off available to him once Mr. Altmeyer became CEO.
Compl. ¶¶105-108.

      The complaint fails to state a cause of action for two
reasons.  First, negligent misrepresentation consists of "[a]n
incorrect statement, negligently made and justifiably relied on,
[and] may be the basis for recovery of damages for economic loss
. . . sustained as a consequence of that reliance."  <u>Mclellan v.</u>

Feit, 376 N.J. Super. 305, 317 (App. Div. 2005); see also Karu v. Feldman, 119 N.J. 135 (1990).

The complaint does not identify an incorrect statement upon which Kerrigan justifiably relied.  The complaint's vague and conclusory statement that "OAPI, by its hiring policies and Employee Manual have misrepresented the terms and conditions of employment . . . and is liable for the lost time and pay" is insufficient to state a claim upon which relief can be granted. Compl. ¶111.

In addition, the complaint fails to state a claim because a promise to do something in the future, even if unfulfilled, is not an actionable misrepresentation unless the promisor had no intention to keep the promise at the time it was made.  See Stolba v. Wells Fargo & Co., 2011 WL 3444078 at *4 (D.N.J. Aug. 8, 2011); Sciovoletti v. JP Morgan Chase Bank, N.A., 2010 WL 2652527, at *3 (D.N.J. June 25, 2010).  The plaintiff alleges in the complaint that the statements about paid time off did not become inaccurate until some time after they were made, specifically when Mr. Altmeyer started leading the company. Compl. ¶¶105-106.

The Court, therefore, will dismiss the plaintiff's misrepresentation claim with prejudice because the Court finds that the plaintiff would not be able to adequately re-plead a misrepresentation count.

11

E.   <u>Defamation</u>

The plaintiff's complaint fails to state a cause of action for defamation because it does not identify any specific, defamatory statements.  The complaint alleges only that the defendants in general made allegedly defamatory remarks about the plaintiff.  <u>See</u> Compl. ¶113 ("Mark Altmeyer intentionally defamed Mr. Kerrigan through his words and conduct, and has diminished Mr. Kerrigan's professional abilities in the eyes of others"); Compl. ¶115 (Mr. Altmeyer and Mr. Donovan "have verbally and through their actions improperly and unfairly diminished Mr. Kerrigan's reputation among his peers, and have made it far more difficult to obtain new employment.").

These conclusory allegations are insufficient as a matter of law, regardless of which state's law is applied, because it does not specifically identify any defamatory statements or the circumstances of the publication of that statement.  <u>See, e.g.</u>, <u>Darakjian v. Hanna</u>, 366 N.J. Super. 238, 249 (App. Div. 2004) ("In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough."); <u>Raneri v. DePolo</u>, 65 Pa. Cmwlth. 183, 186 (1982) ("It is axiomatic that, since the plaintiff's reputation that is protected is the esteem in which others hold him, publication to

12

an identified third person is an essential element of actionable defamation.").

In an effort to grant the plaintiff all plausible inferences, the Court reviewed the entire complaint for statements that could substantiate a defamation claim, even though none was explicitly plead as such.  The complaint does contain, although it does not designate them as defamatory, the following statements:

- Mr. Altmeyer stated Kerrigan "put the company at risk." Compl. ¶39.

- Mr. Altmeyer stated Kerrigan's "business acumen" was poor and that he had "no insights."  Compl. ¶41.

- Kevin Donovan said Kerrigan "continually put the company at risk." Compl. ¶68.

- Mr. Altmeyer "provided undue criticism of Mr. Kerrigan's performance at the May, 2012 meetings, days before the termination, as a means of intimidating others." Compl. ¶86.

These statements fail to state a claim for defamation both because they are not plead with the requisite specificity and because they are opinions that do not imply any undisclosed false facts.  See, Constantino v. Univ. of Pittsburgh, 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001) ("Only statements of fact, not expressions of opinion, can support an action in defamation."); Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 167 (1999)

13

("Opinion statements do not trigger liability unless they imply false underlying objective facts.").

The Court finds that the complaint does not allege any specific defamatory statements that state a claim upon which relief can be granted, but does not conclude that the plaintiff would not be able to re-plead a sufficient defamation claim so the defamation count is dismissed without prejudice.

III.  Conclusion

The Court grants the defendants' motion to dismiss and dismisses the NJLAD, intentional infliction of emotional distress, negligent infliction of emotional distress, and misrepresentation counts with prejudice and the CEPA and defamation counts without prejudice.

An appropriate order follows.