```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JAMES KERRIGAN                  :      CIVIL ACTION
                                :
          v.                    :
                                :
OTSUKA AMERICA                  :
PHARMACEUTICAL, INC., et al.    :      NO. 12-4346
```

MEMORANDUM

McLaughlin, J.                                     March 25, 2013


This case arises from the plaintiff's termination from employment at Otsuka America Pharmaceutical, Inc. ("OAPI"). The plaintiff, James Kerrigan, brings a claim under the New Jersey Conscientious Employee Protection Act ("CEPA") and a common law claim for defamation.

Defendants OAPI and Mark Altmeyer now move to dismiss the plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant the motion.

I. Procedural History

On July 11, 2012, the plaintiff filed a six count complaint against the defendants OAPI and Mark Altmeyer in the Bucks County Court of Common Pleas. The defendants removed the case based on diversity jurisdiction and then moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

On October 31, 2012, the Court dismissed with prejudice the plaintiff's New Jersey Law Against Discrimination claim, intentional infliction of emotional distress claim, negligent infliction of emotional distress claim, and misrepresentation claim. The Court dismissed without prejudice the plaintiff's CEPA and defamation claims.

The plaintiff then filed the amended complaint re-pleading the CEPA and defamation counts and revising the allegations. In response, defendants brought the instant motion to dismiss the amended complaint.

II. Facts as Stated in the Amended Complaint

Kerrigan was hired on January 12, 2006 at Otsuka Pharmaceutical Development and Commercialization, Inc., as a Senior Director, Global Marketing. He was assigned responsibility for the marketing of the drug Samsca in the United States, reporting through OAPI. Am. Compl. ¶10.

From 2009 until his termination, Kerrigan was the "brand lead" for Samsca, a pharmaceutical drug used to treat hyponatremia. Am. Compl. ¶12.

In 2010, as part of the promotional effort, OAPI contracted with Premier Healthcare Resource, Inc., to develop and send newsletters to certain health care providers who encounter hyponatremia. Am. Compl. ¶21. Premier issued one or more

2

newsletters that did not present a "fair and balanced" approach. Am. Compl. ¶23. The error by Premier was discovered and the material was withdrawn from web sites. Am. Compl. ¶24.

In 2011, an article about Samsca published by a web site known as Today's Hospitalist was discovered. The article had used information from an OAPI sponsored panel, and proper disclosures and fair balance were missing. Am. Compl. ¶25.

Kerrigan reported the Today's Hospitalist publication to his superior in the company. Am. Compl. ¶26. The infraction was reported to the FDA, and there was no reprimand. Am. Compl. ¶28.

After the Today's Hospitalist incident, Kerrigan was concerned that the Premier newsletters from 2010 had not been reported to the FDA so he "re-reported" the violation to his supervisor in the company.[1] The Premier newsletter issue was then reported to the FDA, which requested that Otsuka America write a letter noting the error and lack of compliance to the affected health care providers. Am. Compl. ¶29.

OAPI provides in its Comprehensive Compliance Program: "Procedures for Reporting Violations. The Company's Code of Conduct requires employees to report any known or suspected

---

[1] According to the original complaint, the plaintiff brought up the Premier newsletter in response to an inquiry OAPI made into other possible issues after the Today's Hospitalist incident. Orig. Compl. ¶28.

violations of law, regulations, company policies or procedures to their supervisor or to the Chief Compliance Officer." Am. Compl. ¶65.

Two members of Kerrigan's team, who were involved with the Premier and Today's Hospitalist compliance risks resigned from OAPI at the direction of Mark Altmeyer, the President and CEO of OAPI. Am. Compl. ¶27.

After Kerrigan reported the compliance issues, Mark Altmeyer and Human Resources diminished Kerrigan's personnel evaluation from a rating of 4 out of 5 to 2 out of 5, over the objection of Kerrigan's direct supervisor Beshad Sheldon. Am. Compl. ¶¶43-44.

Altmeyer also verbally criticized Kerrigan, making the following statements:

- "You don't have any understanding of your business;" Am. Compl. ¶34.
- "You don't have any insight and your strategy must be wrong;" Am. Compl. ¶ 35.
- "Rosetta does all your thinking for you. You don't have insights;" Am. Compl. ¶37.
- The plaintiff's "business acumen" was poor; Am. Compl. ¶55
- "You continually put the company at risk and you don't take compliance seriously. Every time there is a problem, it is with you and your team." Am. Compl. ¶38.

Moreover, Altmeyer called Kerrigan and "uninvited" him to a company wide planning event in May of 2012. Am. Compl. ¶¶59-60; 118-119. On May 29, 2012, Kerrigan was terminated "for cause." Am. Compl. ¶11.

III. Discussion

The plaintiff's amended complaint contains two counts: (1) violation of CEPA; and (2) common law defamation.

When evaluating a motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, is able to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff cannot rest "on a formulaic recitation of the elements" or mere "labels and conclusions," because "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 545, 555 (citations omitted).

5

A.  CEPA Count

A plaintiff asserting a CEPA violation must show: (1) a reasonable belief that her employer's conduct violated a law, rule, or regulation; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between her whistle-blowing activity and the adverse employment action. See Caver v. The City of Trenton, 420 F.3d 243, 254 (3d Cir.2005); Dzwonar v. McDevitt, 177 N.J. 451, 462, 828 A.2d 893 (2003).

The Court dismissed the CEPA Count in the original complaint on the grounds that the plaintiff could not establish any CEPA-protected whistle-blowing activity because the plaintiff's actions fell within his job duties.

The plaintiff makes two arguments for why the CEPA claim in the amended complaint should not be dismissed for the same reason: (1) the plaintiff's actions did not fall within the plaintiff's job duties; and (2) the law is not settled that actions within the plaintiff's job duties are not CEPA-protected whistle-blowing activities.  Neither argument is availing.

The Court again finds that the reporting of the two compliance issues fell within the plaintiff's job duties.  The plaintiff was the brand lead for the drug Samsca, and both the Today's Hospitalist and Premier issues dealt with the dissemination of information about Samsca as well as FDA

compliance.

The amended complaint also acknowledges that OAPI policy requires employees to report any known or suspected compliance violations to their supervisors. Additionally, two members of the plaintiff's team were admittedly involved with the Premier and Today's Hospitalist compliance risks and resigned after the incidents were reported. Accordingly, the Court finds that the plaintiff's reporting actions fell within his job duties.

The plaintiff's objection to the legal principle of the job duty exception to CEPA is also unpersuasive. It remains the case that a plaintiff cannot establish that he engaged in a CEPA-protected act when the plaintiff's actions fall within the plaintiff's job duties. See Massarano v. N.J. Transit, 400 N.J.Super. 474, 491 (App. Div. 2008).

The plaintiff objects to this reading of Massarano and rightly notes that the Massarano case was decided on other grounds, but the opinion is clear that the Appellate Division considered and agreed with the trial court's determination that the plaintiff's actions were not CEPA-protected because they fell within the plaintiff's job duties. See Massarano at 491 ("Even if we were to find that the disposal of the documents violated public policy, plaintiff's reporting the disposal to Watson did not make her a whistle-blower under the statute. We agree with

the trial court's analysis that plaintiff was merely doing her job as the security operations manager by reporting her findings and her opinion to Watson.").

This interpretation of Massarano has been followed by other courts, who have cited the case and stated the proposition more explicitly. See, e.g., Tayoun v. Mooney, A-1154-10T3, 2012 WL 5273855 at * 5-7, (N.J. Super. Ct. App. Div. Oct. 26, 2012) ("A plaintiff who reports conduct, as part of his or her job, is not a whistle-blower whose activity is protected under CEPA"); Patterson v. Glory Foods, Inc., CIV.A. 10-6831 FLW, 2012 WL 4504597 at *8(D.N.J. Sept. 28, 2012) ("[I]t is well established that CEPA does not protect disclosures that are a regular part of the employee's job responsibilities").

Because the plaintiff's actions fell with his job duties, and because such actions are not protected under CEPA, the amended complaint fails to state a CEPA claim upon which relief can be granted.

B. Defamation

The plaintiff's defamation claim in the original complaint was dismissed because the original complaint failed to identify any specific, defamatory statements. In particular, there were two problems with the original complaint's defamation count. First, the original complaint lacked details about the

8

circumstances of publication of the alleged defamatory statements. Second, the statements in the original complaint were opinions, and thus not capable of defamatory meaning.

The amended complaint cures the first of those issues by providing greater details regarding the circumstances and identities of third parties who were present when the allegedly defamatory statements were made.

However, the amended complaint fails to cure the second deficiency as the content of the allegedly defamatory statements continues to consist of opinions. Specifically, the amended complaint alleges that Defendant Altmeyer repeatedly verbally criticized Kerrigan and made the following statements:

- "You don't have any understanding of your business;" Am. Compl. ¶34.
- "You don't have any insight and your strategy must be wrong;" Am. Compl. ¶ 35.
- "Rosetta does all your thinking for you. You don't have insights;" Am. Compl. ¶37.
- The plaintiff's "business acumen" was poor; Am. Compl. ¶55
- "You continually put the company at risk and you don't take compliance seriously. Every time there is a problem, it is with you and your team." Am. Compl. ¶38.

These statements are opinions that do not imply any undisclosed false facts. Such statements cannot be the basis for defamation under either Pennsylvania or New Jersey law. See, Constantino v. Univ. of Pittsburgh, 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001) ("Only statements of fact, not expressions of opinion, can support an action in defamation."); Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 167 (1999) ("Opinion statements do not trigger liability unless they imply false underlying objective facts.").

Therefore, the plaintiff's amended complaint fails to state a claim for defamation upon which relief can be granted.

IV. Conclusion

The Court grants the defendants' motion and will dismiss the plaintiff's amended complaint with prejudice.

An appropriate order follows.